ORIGINAL

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/12/22
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X
    KARL LEAVERTON, as the
    SECURITYHOLDER'S REPRESENTATIVE,

                Plaintiff,         21 Civ. 5659 (LLS)

      - against -               OPINION & ORDER

    OFI GLOBAL INSTITUTIONAL, INC.,

                Defendants.
- - - - - - - - - - - - - - - - - -X

    Plaintiff Karl Leaverton as Representative of the Securityholders of SNW Asset Management Corporation ("SNWAM") brings this action against defendant OFI Global Institutional, Inc. ("OFI Global") asserting a claim of breach of contract. The claim arises out of OFI Global's alleged failure to use its "best efforts" to effectuate the Merger Agreement between the parties.

    Defendant OFI Global now moves to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). Dkt. No. 7. For the reasons below, OFI Global's motion to dismiss is GRANTED.

## Background

    The following facts are taken from the Amended Complaint. Dkt. No. 5 (Amend. Compl't). SNWAM was founded in 2002 by Seattle Northwest Securities Corporation to manage high-quality fixed income portfolios for clients. Amend. Compl't ¶ 6. In 2013, SNWM was spun off into an independent company. Id. at ¶ 9.

By February 28, 2017, SNWAM had $2.75 billion in assets under management ("AUM"). Id. at ¶ 10.

OFI Global is an investment company with more than $300 billion AUM. Id. at ¶ 4. OFI contacted SNWAM in 2016 to discuss a potential acquisition. Id. at ¶ 11. Following the solicitation, the parties engaged in due diligence during which OFI Global "made numerous representations regarding the transaction and the resources that would be placed behind the SNWAM business following the proposed transaction," including making clear that the "resources and channels that would be placed behind the business going forward would make hitting the earn-out AUM targets a 'lay-up' in an effort to convince the Board of Directors to agree to a $6 million earn-out as opposed to a one-time lump-sum payment at closing." Id. at ¶ 17. In particular "OFI Global was adamant that their salesforce would integrate with SNWAM to substantially increase the assets. They represented that they would be fully engaged in the future development of SNWAM and their past performance with the firms they bought recently was evidence that they could accomplish this." Id. at ¶ 18.

On February 24, 2017, the parties executed the Agreement and Plan of Merger (the "Merger Agreement"), which provided SNWAM Security holders with an upfront payment of $8 million. Id. at ¶ 23. It also provided the possibility of three

additional "Earn Out Payments," calculated according to a detailed formula but ranging up to $2 million each, if SNWAM's subsidiary, SNW Asset Management, LLC, achieved certain specified levels of AUM by each of the three earn out dates. Agreement § 3.1(a)(i)-(iii). The transaction closed on April 28, 2017.

Relevant to the dispute at hand, the Merger Agreement provided that:

> Section 3.7(e):  Following the Closing, the businesses of the Acquired Companies shall be managed in the sole and absolute discretion of Buyer and Buyer shall not take or omit to take any action for the purpose of reducing or eliminating the amount of, or reducing the probability of receipt of, any Earn Out Payment.
>
> Section 6.8: No Other Representations. Notwithstanding anything in this Agreement to the contrary, neither Buyer nor Merger Sub, nor any of their respective employees, officers, directors or stockholders, has made, and none of them is making, any representation or warranty whatsoever, express or implied, with respect to Buyer or its Affiliates or the transactions contemplated by this Agreement or any other matter, other than those representations and warranties of Buyer and Merger Sub expressly set forth in this Article VI or any certificate delivered pursuant to this Agreement
>
> Section 7.16: Further Assurances. Each party shall cooperate with the others, and execute and deliver, or use its reasonable best efforts to cause to be executed and delivered, all such other instruments, including instruments of conveyance, assignment and transfer, and take all such other actions as such party may reasonably be requested to take by the other parties hereto from time to time, consistent with the terms of this Agreement, in order to effectuate the provisions and purposes of this Agreement and the transactions contemplated hereby.

> Section 11.7: Entire Agreement. This Agreement (including the Exhibits and Schedules hereto), the Ancillary Agreements and the Confidentiality Agreement constitute the entire agreement, and supersede all prior written agreements, arrangements, communications and understandings and all prior and contemporaneous oral agreements, arrangements, communications and understandings, among the parties with respect to the subject matter of this Agreement. No party to this Agreement shall be under any legal obligation to enter into or complete the transactions contemplated hereby unless and until this Agreement shall have been executed and delivered by each of the parties.

Dkt. No. 1 Ex. A (Merger Agreement).

On the date of measurement to determine the first Earn Out Payment, April 28, 2019, SNWAM had approximately $3.4 billion in AUM entitling it to a payout of $915,900. Dkt. No. 5 (Amend. Compl't) ¶ 26. If SNWAM had $4.25 billion on AUM by this date, it would have been entitled to the full payout of $2 million. The second and third Earn Out Payments were fully actualized with SNWAM receiving $2 million for each. Id. at ¶ 30.

SNWAM brought suit on June 30, 2021 and amended its complaint on August 3, 2021.  It alleges OFI Global breached the Merger Agreement by failing to use its "best efforts" to effectuate the provisions of the contract and maximize the earn-out provision. Id. at ¶ 30. Instead SNWAM alleges that "the first earn-out target was missed because of OFI Global's deliberate disregard and failure to give SNWAM the sales support that it had promised to provide." Id. at ¶ 30. In particular,

SNWAM alleges that OFI Global took actions to reduce SNWAM's Earn Out Payments, including re-organizing the SNWAM Sales Team, removing one of the two sales persons, failing to invest and provide ongoing sales support, and instead concentrating its attention on its merger with Invesco. Id. at ¶ 24-25, 32. SNWAM now seeks compensatory damages and attorneys' fees.

On August 30, 2021, OFI Global moved to dismiss for failure to state a claim.

## Motion to Dismiss Standards

### I.   Generally

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) ("To survive a motion to dismiss, a complaint must plead enough facts to state a claim to relief that is plausible on its face."). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 at 678. This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" Twombly, 550 U.5. at 570 (citations omitted).

In determining whether a plaintiff is plausibly entitled to relief under Rule 12(b)(6), the Court may consider the complaint and "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). The Court reviews the complaint "liberally, accepting all factual allegations as true, and drawing all reasonable inferences in the plaintiff's favor." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 230 (2d Cir. 2016). The principle that a Court must accept all allegations as true, however, does not apply to legal conclusions. Iqbal, 556 U.S. at 678. Thus, when reviewing a motion to dismiss for breach of contract, the Court should "strive to resolve any contractual ambiguities in the non-moving party's favor," but it is "not constrained to accept the allegations of the pleading in respect of the construction of the contract," which are legal questions for the court to decide. Gerdau Ameristeel US Inc. v. Ameron Int'l Corp., 13 CIV. 07169, 2014 WL 3639176, at *3 (S.D.N.Y. July 22, 2014) (quoting Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)).

## II. Breach of Contract

The plaintiff must allege the specific provisions of the contract upon which liability is predicated. Benihana of Tokyo,

LLC v. Angelo, Gordon & Co., L.P., 259 F. Supp. 3d 16, 33 (S.D.N.Y. 2017), aff'd, 712 F. App'x 85 (2d Cir. 2018) (citing Sud v. Sud, 211 A.D.2d 423, 424, 621 N.Y.S.2d 37 (N.Y. App. Div. 1st Dept. 1995)).

"A court may dismiss a claim for breach of contract on a Rule 12(b)(6) motion where the contract is clear and unambiguous" and does not support the plaintiff's claim. Gerdau Ameristeel US Inc., 2014 WL 3639176, at *3; Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC, 842 F. Supp. 2d 502, 509-10 (S.D.N.Y. 2012). However, "if a contract is ambiguous as applied to a particular set of facts, a court has insufficient data to dismiss a complaint for failure to state a claim." Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt. LLC, 692 F.3d 42, 56 (2d Cir. 2012).

Under New York law,[1] a contract is "unambiguous if the language it uses has a definite and precise meaning, as to which there is no reasonable basis for a difference of opinion." Lockheed Martin Corp. v. Retail Holdings, N.V., 639 F.3d 63, 69 (2d Cir. 2011) (citing White v. Cont'l Cas. Co., 878 N.E.2d 1019, 1021 (2007)). Conversely, "the language of a contract is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined

---

[1] The Merger Agreement between the parties is governed by New York law. Dkt. No. 1 Ex. A (Merger Agreement) Section 11.9.

the context of the entire integrated agreement." Id. "The language of a contract is not made ambiguous simply because the parties urge different interpretations." Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992). Ambiguity is determined not by looking to outside sources but by looking within the four corners of the contract and reading the integrated document as a whole. Lockheed Martin Corp., 639 F.3d at 69.

## Discussion

### I. Breach of Contract Claim

"To state a claim in federal court for breach of contract under New York law, a complaint need only allege: (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996). It is fundamental that contracts are interpreted in accordance with the parties' intent, the best evidence of which is the contract itself. Gary Friedrich Enterprises, LLC v. Marvel Characters, Inc., 716 F.3d 302, 313 (2d Cir. 2013).

SNWAM's breach of contract claim against OFI Global is brought solely under the Merger Agreement. The Amended Complaint asserts breach of one provision, Section 7.16, which allegedly

obliged OFI Global "to use its best efforts [to] increase the AUM" of SNWAM. Dkt. No. 5 (Amend. Compl't) ¶ 22.

Section 7.16 of the Merger Agreement provides in full:

> <u>Further Assurances</u>. Each party shall cooperate with the others, and execute and deliver, or use its reasonable best efforts to cause to be executed and delivered, all such other instruments, including instruments of conveyance, assignment and transfer, and take all such other actions as such party may reasonably be requested to take by the other parties hereto from time to time, consistent with the terms of this Agreement, in order to effectuate the provisions and purposes of this Agreement and the transactions contemplated hereby.

Dkt. No. 1 Ex. A (Merger Agreement).

That provision imposes on the parties an obligation to (1) use reasonable best efforts to cause to be executed and delivered all such other instruments and (2) to take all such other actions as reasonably requested by the other party to effectuate the provisions and purposes of this Agreement and the transactions contemplated hereby.

### 1. Best Efforts to Execute and Deliver Instruments Clause

There is no viable claim for breach of the first obligation to use best efforts to execute and deliver instruments. Plaintiff concedes as much. <u>See</u> Dkt. No. 15 (Memorandum in Opposition) at 5 ("Plaintiff does not even allege OFI Global failed to execute and deliver instruments.").

Any argument that OFI Global's failure to provide resources to grow SNWAM's AUM is in violation of that clause is

-9-

implausible. The Court must give all words and phrases their plain meaning, Gary Friedrich Enterprises, LLC v. Marvel Characters, Inc., 716 F.3d 302, 313 (2d Cir. 2013), and interpreting "instruments" to include resources goes against its plain meaning of a "written legal document that defines rights, duties, entitlements, or liabilities, such as a statute, contract, will, promissory note, or share certificate," Black's Law Dictionary (11th ed. 2019). Interpreting instruments to include resources also violates the doctrine of *noscitur a sociis* requiring courts to "interpret a word by the company it keeps" because in Section 7.16 instruments are described as including "instruments of conveyance, assignment and transfer," which are legal documents and not resources. See Rothstein v. Am. Int'l Grp., Inc., 837 F.3d 195, 210 (2d Cir. 2016). Additionally, the term "instruments" as used elsewhere in the contract does not encompass resources and because "terms in a contract must be assumed to have the same meaning throughout," instruments as used in Section 7.14 does not include resources. U.S. Bank Nat'l Ass'n v. T.D. Bank, N.A., 569 B.R. 12, 23 (S.D.N.Y. 2017).

Accordingly, the Amended Complaint does not state a claim of breach of contract of the "reasonable best efforts to cause to be executed and delivered, all such other instruments" clause.

## 2. In Order to Effectuate the Provisions of this Agreement Clause

SNWAM's Amended Complaint alleges that under Section 7.16 OFI Global "was required to use its best efforts to effectuate the provisions of the contract and maximize the earn-out provisions." Dkt. No. 5 (Amend. Compl't) ¶ 35. However, the text of Section 7.16 does not impose such an obligation on OFI Global. SNWAM has thus failed to state a claim for breach of contract.

SNWAM's interpretation of Section 7.16 is based on a misplaced modifier. Section 7.16 reads the parties shall "execute and deliver, or use its reasonable best efforts to cause to be executed and delivered, all such other instruments, including instruments of conveyance, assignment and transfer, and take all such other actions as such party may reasonably be requested to take." The "best efforts" language SNWAM is relying on as the basis for its breach of contract claim only modifies the clause relating to executing and delivering instruments. The text of Section 7.16 refutes the premise that OFI Global's commitment to use its best efforts to deliver instruments was a general commitment to use its best efforts to take all actions to effectuate the Agreement. The plain language of the Merger Agreement does not impose an obligation on the parties to use

their best efforts to take all such other actions as reasonably requested.

SNWAM cannot avoid dismissal on the grounds that "the meaning of the 'best efforts' provision, and whether OFI Global breached the provision, are factual issues that cannot be resolved on the face of the complaint." Dkt. No. (Opposition to Motion to Dismiss) at 8. Courts in this Circuit have held that the "'precise meaning of [a] 'best efforts' provision and whether [a defendant] breached the provision[ ] are factual issues that cannot be resolved' at the motion to dismiss stage." Errant Gene Therapeutics, LLC  v. Sloan-Kettering Inst. for Cancer Rsch.,  15 CV 2044, 2016 WL 205445, at *7 (S.D.N.Y. Jan. 15, 2016) (alteration in original). But the issue here is not how to measure "best efforts" or whether OFI Global's conduct fell short of "best efforts." The issue is whether there is even an applicable "best efforts" provision—whether OFI Global is obliged to use its best efforts to take requested actions- which there is not.

More so, SNWAM's interpretation of Section 7.16 leaves out key language of the provision. Even if the best effort clause extended beyond the execution and delivery of instruments, Section 7.16 only requires each party to "take all such other actions as such party may reasonably be requested to take by the other parties hereto, consistent with the terms of this

Agreement, in order to effectuate the provisions and purposes of this Agreement and the transactions contemplated hereby." Dkt. No. 1 Ex. A (Merger Agreement) Section 7.6. SNWAM's interpretation of Section 7.16 in the Amended Complaint leaves out the qualifier that the actions OFI Global are required to take are only those that are reasonably requested of it.

The Amended Complaint does not assert that OFI Global failed to take requested actions. The Amended Complaint alleges that "When Plaintiff asked the head of fixed income portfolio management to talk with the head of distribution in the spring of 2019, he was told there was 'no way' he was going to be able to speak with the head. The purpose of this request was to understand what plans OFI Global had in place to assist SNWAM in hitting their earn-out goals." Amend. Compl't ¶ 25. Accepting that as true, and drawing all inferences in SNWAM's favor, that allegation is not a request for OFI to take action. Accordingly, the Amended Complaint does not plead that OFI Global failed to take any requested actions in violation of the Agreement.

But, even if that allegation in the Amended Complaint were a request to act, Section 7.16 only obliges the parties to take requested actions necessary to "effectuate the provisions and purposes" of the Merger Agreement. The Amended Complaint alleges that the Merger Agreement obliged OFI Global to "maximize the earn-out payment." Amend. Compl't ¶ 35. It does not cite any

- 13 -

specific provision in the Agreement as the source of that obligation, and we have found none.

SNWAM now argues that Section 3.7(e) required OFI Global to "devote sufficient resources to grow the assets under management in order to avoid reducing the probability that SNWAM would receive the maximum earn-out" and that it "sufficiently alleged that OFI Global's removal of a key sales representative, or 50% of the sales force, was done in breach of this provision in order to 'reduce or eliminate' the amount of earn-out payments." Dkt. No. 15 (Memorandum in Opposition) at 6.

But SNWAM leaves out the beginning of the Section. Section 3.7(e) states in its entirety that:

> "Following the Closing, the businesses of the Acquired Companies shall be managed in the sole and absolute discretion of Buyer and Buyer shall not take or omit to take any action for the purpose of reducing or eliminating the amount of, or reducing the probability of receipt of, any Earn Out Payment."

Dkt. No. 1 Ex. A (Merger Agreement).

There is no affirmative requirement that OFI Global devote resources to grow the AUM or maximize the earn out payment. Rather, the text clearly states OFI Global has the "sole and absolute discretion" to manage SNWAM. The Court cannot interpret Section 3.7(e) to impose an obligation not explicitly included in the text. To do so would render meaningless the "sole and absolute discretion" the Agreement imparted onto OFI Global.

- 14 -

See Int'l Multifoods Corp. v. Com. Union Ins. Co., 309 F.3d 76, 86 (2d Cir. 2002) ("We disfavor contract interpretations that render provisions of a contract superfluous."). The only limitation to that discretion is that OFI Global cannot take action "for the purpose of reducing" the Earn Out Payment. But the obligation to avoid intentionally reducing does not equate to having to take action to increase. These parties, "sophisticated business entities, represented by counsel, . . . easily could have included a provision" in the Merger Agreement evincing their intent to oblige OFI Global to devote resources to grow SNWAM's AUM, "but they did not, and thus their unambiguous agreement cannot be altered." Leeber Realty LLC v. Trustco Bank, 316 F. Supp. 3d 594, 622 (S.D.N.Y. 2018)

The Amended Complaint does not contain sufficient factual matter to state a plausible claim that OFI Global failed to take requested actions or acted in any way for the purpose of reducing or eliminating the amount of any Earn Out Payment. It alleges that OFI Global "removed one of SNWAM's two sales persons from the SMA platform to concentrate on selling OFI comingled investment products" and that "OFI Global's attention was on [its] merger with Invesco, and not on supporting SNWAM." Amed. Compl't ¶ 24, 32. There are no well-pled facts to support a reasonable inference that OFI Global did or failed to do anything in order to purposefully reduce or eliminate the Earn

Out Payments. To the contrary, the Amended Complaint allows the reasonable inference to be drawn that OFI Global's actions were based on distraction or business strategy rather than for the purpose of minimizing the payments.

The plain language of the Merger Agreement does not oblige OFI Global to grow SNWAM's AUM. Insufficient facts are alleged to show OFI Global acted purposefully to reduce the Earn Out Payment. Therefore, SNWAM's claim for breach of contract is dismissed as a matter of law.

## II. Breach of the Implied Covenant of Good Faith and Fair Dealing Claim

SNWAM argues that it has adequately pled a claim that OFI Global breached its obligation of good faith and fair dealing, thereby breaching the Merger Agreement.

Although the complaint that initiated this action included a second claim for breach of the implied covenant of good faith and fair dealing, the Amended Complaint at subject in this motion is devoid of that second count. See Dkt. No. 1 at 10-12. SNWAM acknowledges that it did not plead a separate breach of good faith and fair dealing claim in its Amended Complaint but seeks to justify its omission on the basis that "'New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled.'" Dkt. No. 15 (Opposition to Motion) at 9 n.1 (quoting

Harris v. Provident life & Acc. Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002).

While New York law does not allow a party to claim a breach of both a written agreement and the implied covenant based on the same factual allegations and seeking the same damages, this does not excuse a party from pleading both claims. See F.R.C.P. 8(a)(2) (a complaint must include a "statement of the claim showing that the pleader is entitled to relief); Augienello v. Coast-to-Coast Fin. Corp., 64 F. App'x 820, 822 (2d Cir. 2003) (affirming district court's decision to dismiss breach of contract claim for failure to state a claim when "the complaint does not include a claim for or allegation of a breach of the duty of good faith and fair dealing" because the liberal pleading standards cannot amend "the complaint to include a claim that they did not plead"). Having chosen not to assert any cause of action for breach of the implied covenant, SNWAM is not free to add one now through its briefing. Fadem v. Ford Motor Co., 352 F. Supp. 2d 501, 516 (S.D.N.Y.), aff'd, 157 F. App'x 398 (2d Cir. 2005) ("It is long-standing precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs.").

As SNWAM correctly noted, because New York law prohibits a claim for breach of the implied covenant that is premised on the same facts and seeks the same damages as a breach of contract

and basis of SNWAM's claims depend on the same facts and seek the same damages, granting leave to amend the complaint to include a claim for breach of the implied covenant would be futile.

## Conclusion

For the reasons discussed above, OFI Global's motion to dismiss SNWAM's Amended Complaint is granted, with prejudice.

The Clerk of the Court is directed to dismiss the amended complaint in its entirety, without further leave to amend. No further pleading can alter the words in the Agreement.

So Ordered.

Dated:   New York, New York
         September 12, 2022

                                    *Louis L. Stanton*
                                    LOUIS L. STANTON
                                    U.S.D.J.